**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

                                            Case No.  09-35259

ALLEN CARTER SHIRLEY
DIANE WINN SHIRLEY

                 Debtors

BANKEAST, in its capacity as authorized
Representative of the Estate of Allen Carter
Shirley and Diane Winn Shirley

                 Plaintiff

               v.                                   Adv. Proc. No. 10-3031

ALLEN CARTER SHIRLEY and DIANE WINN
SHIRLEY, as Trustees of the Allen C. Shirley and
Diane W. Shirley Revocable Living Trust

                 Defendants

BANKEAST, in its capacity as authorized
Representative of the Estate of Allen Carter
Shirley and Diane Winn Shirley

                 Plaintiff

               v.                                   Adv. Proc. No. 10-3032

RUTH W. SHIRLEY

                 Defendant

## M E M O R A N D U M

**APPEARANCES:**    THE RITCHIE LAW FIRM, P.C.
                        Wilson S. Ritchie, Esq.
                        Rachel K. Powell, Esq.
                        607 Market Street
                        Suite 1100
                        Knoxville, Tennessee  37902
                        Attorneys for Plaintiffs

WILLIAM E. MADDOX, JR., ESQ.
 Post Office Box 31287
 Knoxville, Tennessee  37930
 Attorney for Defendants Allen Carter Shirley and
 Diane Winn Shirley, as Trustees of the Allen C. Shirley
 and Diane W. Shirley Revocable Living Trust

MORTON & MORTON, PLLC
 J. Myers Morton, Esq.
 1518 North Broadway
 Knoxville, Tennessee  37917
 Attorneys for Defendant Ruth W. Shirley

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

Before the court are two adversary proceedings filed on April 5, 2010, by the Plaintiff, BankEast, in its capacity as the authorized representative of the Debtors' bankruptcy estate. The Complaint to Avoid Fraudulent Transfer, initiating Adv. Proc. No. 10-3031, was filed against the Debtors, Allen Carter Shirley and Diane Winn Shirley, in their capacity as Trustees of the Allen C. Shirley and Diane W. Shirley Revocable Living Trust. By this action, the Plaintiff seeks to avoid, pursuant to 11 U.S.C. § 548(a) (2006) and 11 U.S.C. § 544(b)(1) (2006), in conjunction with Tennessee Code Annotated § 66-3-305(a) (2004), a transfer of real property on March 27, 2009, from the Debtors to themselves as Trustees of the Allen C. Shirley and Diane W. Shirley Revocable Living Trust. The Plaintiff also seeks to recover the avoided transfer or its value pursuant to 11 U.S.C. § 550(a) (2006).[1] The Complaint to Avoid Fraudulent Transfer, initiating Adv. Proc. No. 10-3032, amended by the Amended Complaint filed on October 21, 2010, was filed against Ruth W. Shirley. By this action, the Plaintiff seeks to avoid, pursuant to 11 U.S.C. §§ 548(a) and 544(b)(1), in conjunction with Tennessee Code Annotated § 66-3-305(a) and/or 11 U.S.C. § 547(b) (2006), a transfer of real property from the Debtors to Ruth Shirley, the mother of Allen Carter Shirley, on March 27, 2009, and to recover the real property, or its value, pursuant to 11 U.S.C. § 550(a) (2006).

Pursuant to the Amended Pretrial Orders entered on October 22 and 26, 2010, the two adversary proceedings were consolidated for trial, which was held on August 1 and 2, 2011. The

---

[1] The Amended Pretrial Order submitted by the parties, entered on October 22, 2010, did not include the § 550(a) issue. The court allowed the Plaintiff, with the agreement of the Defendants, to orally amend the Amended Pretrial Order on the morning of the trial to include the § 550(a) issue.

3

record before the court consists of Stipulations of Facts and Documents (Stipulations)[2] filed in each

adversary proceeding, sixty-two exhibits introduced into evidence, and the testimony of seven

witnesses:  Kenneth Woodford, Randall Brackins, Larry Waters, William Dennis McDermott, IV,

and each of the Defendants, Allen C. Shirley, Diane W. Shirley, and Ruth W. Shirley.  Additionally,

as directed by the court, the parties filed post-trial briefs with respect to the issue of insolvency on

August 16, 2011.

This is a core proceeding.  28 U.S.C. § 157(b)(2)(H) (2006).

## I

On September 28, 2007, the Debtors executed a Promissory Note to the Plaintiff in the

amount of $4,450,000.00, payable in twelve monthly installments based on a one-year amortization

with a maturity date of September 28, 2008.  STIPS. at ¶¶ 2-3; TRIAL EX. 1.  The Debtors executed

the First Modification of Promissory Note (Note) on October 21, 2008, with an effective date of

September 28, 2008, in the principal amount of $4,448,510.00, payable at an interest rate of 8.25%

in six monthly installments of interest only, with the entire balance, including principal, accrued

interest, and other charges due on March 28, 2009.  STIPS. at ¶¶ 4-6; TRIAL EX. 2.  By a letter dated

February 20, 2009, the Plaintiff, through its attorneys, notified the Debtors that it would not extend

or renew the Note, that the entire principal and interest balance of $4,508,657.55 was due on the

---

[2] The Stipulations of Facts and Documents filed in each adversary proceeding are identical, and the court will, therefore, refer to the Stipulations as if they are the same document.

March 28, 2009 maturity date, and that failure to make payment in full would constitute a default.[3] STIPS. at ¶¶ 7-9; TRIAL EX. 3.  In response to the February 20, 2009 letter, the Debtors, on March 25, 2009, by a letter to the Plaintiff from Mr. Shirley, requested that the loan be rewritten to a term of five years at a fifteen year amortization together with 4% interest with a balloon payment at the end of the fifth year.  STIPS. at ¶ 11; TRIAL EX. 17.  The Debtors did not pay the Note on or before the March 28, 2009 maturity date.  STIPS. at ¶ 10.

On March 27, 2009, the Debtors executed a General Warranty Deed transferring to Ruth Shirley a one-half undivided interest in real property located at 746 Caney Creek Road, Sevierville, Tennessee, the whole of which was originally "conveyed to Allen C. Shirley and wife, Diane W. Shirley, by Warranty Deed from Trula R. Studer and husband, Vurrie Studer, James W. Reagan, Claude J. Reagan, Ina Reagan Arden, and Ray Reagan, dated November 14, 1978, of record in Warranty Deed Book 281, Page 937, in the Register's Office for Sevier County, Tennessee" (Caney Creek Tract 1).  STIPS. at ¶ 14; TRIAL EX. 20.  This document, marked as Instrument number 09018692, was recorded with the Register of Deeds for Sevier County, Tennessee, in Book 3312 at pages 228-230, at 3:10 p.m. on March 27, 2009.  TRIAL EX. 20.

Also on March 27, 2009, the Debtors executed a Memorandum of Trust creating The Allen C. Shirley and Diane W. Shirley Revocable Living Trust (Trust), naming themselves as Trustees.  TRIAL EX. 19.  Included within its terms, the Debtors, as Settlors, "reserve[d] the right to

---

[3] Trial Exhibit 3 establishes that the principal balance owing on the Note on February 20, 2009, was $4,448,510.00 and accrued interest through that date was $23,447.35.  As interest continued to accrue at the rate of $1,019.45 per diem, an additional $36,700.20 in interest had accrued during the 36 days from February 21, 2009 through March 28, 2009, the date the Note matured.

revoke the Trust in whole or in part at any time and from time to time by written instrument executed

by the Settlors, or the survivor thereof, and delivered to the Trustee." TRIAL EX. 19 at ¶ 2.

Additionally, the Debtors, as Trustees, were authorized to "hold, administer and distribute the net

income and principal of the Trust Estate to themselves as the Settlors" and, within their discretion,

"to deal with any property contained in the Trust or to acquire property for the Trust, including the

power to sell, encumber, mortgage, and pledge the property and assets of the Trust without the

necessity of third parties looking to the application of any proceeds from a sale or mortgage of the

Trust assets." TRIAL EX. 19 at ¶¶ 3, 5. This document, marked as Instrument number 09018693, was

recorded with the Sevier County Register of Deeds at 3:10 p.m. on March 27, 2009, in Book 3312

at pages 231-232. TRIAL EX. 19.

Finally, and again on March 27, 2009, the Debtors executed a Quit Claim Deed transferring

to the Trust their remaining one-half undivided interest in Caney Creek Tract 1 as well as their one-

half undivided interest in real property located at 710 Caney Creek Road, Sevierville, Tennessee,

"BEING the same property conveyed to Allen C. Shirley and Diane W. Shirley, husband and wife,

and Ruth W. Shirley, widow, by Warranty Deed from John B. Oakley and Lisa N. Oakley, dated

January 5, 2004, of record in Book 1879, Page 640, in the Register's Office for Sevier County,

Tennessee" (Caney Creek Tract 2). STIPS. at ¶ 12; TRIAL EX. 18. The Quit Claim Deed, marked as

Instrument number 09018694, was also recorded on March 27, 2009, at 3:10 p.m. with the Sevier

County Register of Deeds, in Book 3312 at pages 233-235. TRIAL EX. 18. The Debtors operate

Caney Creek Tracts 1 and 2, along with a third adjoining parcel purchased by them in 2007, as

Mountain Mist Farms, where they grow grape and other berry vines and fruit trees, maintain beehives, and operate a farmer's market, the Berry Barn, and cabins.[4]

The Debtors filed the Voluntary Petition commencing their bankruptcy case under Chapter 11 on September 22, 2009. STIPS. at ¶ 1. On March 25, 2010, the court entered the Order Granting Motion of BankEast for Derivative Standing to Pursue Avoidance of Fraudulent Conveyances, authorizing the Plaintiff to commence these adversary proceedings for the benefit of the Debtors' estate, which it did on April 5, 2010.

On October 22, 2010, the Order Confirming Plan of Reorganization was entered confirming the Third Amended Plan of Reorganization by BankEast dated September 13, 2010. The Order Modifying Third Amended Plan of Reorganization was entered on January 6, 2011. The confirmed plan, as modified, provides at Section E of Article III for the auction sale of certain of the Debtors' real property, including the land and cabins operated on Caney Creek Tracts 1 and 2 in the event the Plaintiff prevails in the present avoidance actions.

## II

The Plaintiff seeks to avoid the transfers effectuated by the Quit Claim Deed and the General Warranty Deed under 11 U.S.C. § 548(a) which, as material to these adversary proceedings, provides:

> (a)(1)  The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within

---

[4] The third Caney Creek parcel was also transferred into the Trust at a later date with the consent of the lienholder, Home Federal Bank. The Plaintiff has not sought to avoid that transfer.

2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation[.]

11 U.S.C. § 548(a)(1).  Actual or constructive fraud under either of the above referenced subsections of § 548(a) requires proof by a preponderance of the evidence.  *Slone v. Lassiter (In re Grove-Merritt)*, 406 B.R. 778, 793 (Bankr. S.D. Ohio 2009); *Lisle v. John Wiley & Sons, Inc. (In re Wilkinson)*, 319 B.R. 134, 138 (Bankr. E.D. Ky. 2004).  Correspondingly, 11 U.S.C. § 550 provides, in material part, that "to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) . . ., the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from— (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made[.]"  11 U.S.C. § 550(a)(1).

## A

The Plaintiff first asserts that the transfers should be set aside under § 548(a)(1)(A) for actual fraud and intent to hinder or delay creditors.  Whether a transfer is fraudulent under § 548(a)(1)(A) depends upon the specific facts and circumstances surrounding the transfer, and although fraudulent intent is rarely proved by direct evidence, it is often presumed through the presence of badges of

fraud; i.e., facts that throw suspicions on the transaction calling for an explanation. *Holcomb Health Care Servs., LLC v. Quart Ltd., LLC (In re Holcomb Health Care Servs., LLC)*, 329 B.R. 622, 670 (Bankr. M.D. Tenn. 2004) (citations omitted); *see also Schilling v. Heavrin (In re Triple S Rests., Inc.)*, 422 F.3d 405, 414 (6th Cir. 2005) ("Badges of fraud are circumstances so frequently attending fraudulent transfers that an inference of fraud arises from them.") (citation omitted).

"The issue of fraud is commonly determined by certain recognized indicia, denominated 'badges of fraud,' which are circumstances so frequently attending fraudulent transfers that an inference of fraud arises from them.  Inadequacy of consideration, secret or hurried transactions not in the usual mode of doing business, and the use of dummies or fictitious parties are common examples of 'badges of fraud.'" *United States v. Leggett*, 292 F.2d 423, 426-27 (6th Cir. 1961) (citations omitted); *see also Children's Orchard, Inc. v. Children's Orchard Store No. 142, Inc*., 2010 WL 2232440, at *5 n.3 (E.D. Mich. May 28, 2010) (stating that the Sixth Circuit has also recognized the following as badges of fraud:  "including: (1) a close relationship between the parties; (2) a transfer for no consideration; (3) the transferor's continued relationship with the property, for example, in the form of ongoing mortgage, tax and insurance payments on the property; and (4) each party's awareness of the transferor's increasing financial difficulty") (citing *United States v. Issac*, 1992 WL 159795, at *4 (6th Cir. July 10, 1992)).

In support of its claims, the Plaintiff contends that the following badges of fraud are present when analyzing the transfers made to the Trust and to Ruth Shirley, thus indicating actual fraud by the Debtors under § 548(a)(1):  (1) the transferees are insiders of the Debtors; (2) the Debtors retained control of the property following the transfers; (3) the timing of the transfers on March 27,

2009, in correlation to the formation of the Trust and the maturity of the Note to the Plaintiff on

March 28, 2009; (4) a lack of consideration or value received by the Debtors in exchange for the

transfer; and (5) the Debtors were insolvent at the time of or shortly after the transfers.  In attempting

to prove otherwise – that the mere presence of badges of fraud do not indicate an actual intent to

hinder, delay, or defraud – the Debtors do not dispute or refute that the transfers were made to

insiders, that they retained control over the property transferred, that the Trust paid no consideration

to the Debtors for the Quit Claim Deed, STIPS. at ¶ 13, or that the transfers were effectuated

immediately prior to the Note's maturity date, although they proffered evidence that they had begun

the process of creating the Trust prior to that time.  The Debtors do, however, dispute that they were

insolvent at the time of or shortly after the transfers.

> The Bankruptcy Code defines "insolvent" as follows:
>
> (A) with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—
>
> > (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and
> >
> > (ii) property that may be exempted from property of the estate under section 522 of this title[.]

11 U.S.C. § 101(32)(A) (2006).  In other words, insolvency is determined through "a balance sheet

test": whether liabilities exceed assets, "excluding the value of preferences, fraudulent conveyances

and exemptions."  *Webb Mtn, LLC v. Exec. Realty P'ship, LP (In re Webb Mtn, LLC)*, 414 B.R. 308,

355 (Bankr. E.D. Tenn. 2009) (citations omitted).

With respect to the Debtors' liabilities, Mr. Shirley testified that the Debtors' debts were similar in March 2009 to those listed in their statements and schedules in September 2009, although some of the debts listed were for construction costs. As reflected in their Schedules D, E, and F, as amended, the Debtors' liabilities were $3,501,581.00, and, according to Mr. Shirley's testimony, this figure is also an approximation of the Debtors' liabilities in March 2009. *See* Coll. Trial Ex. 24; Trial Ex. 25; Coll. Trial Ex. 26. Of that amount, $1,325,809.00 was unsecured debt[5] and $2,175,772.00 was secured. This amount does not, however, include the $4,508,657.55 owed by the Debtors to the Plaintiff under the Note as of March 28, 2009,[6] as reflected on Trial Exhibit 3, which raises the Debtors' liabilities to $8,010,238.55.

With respect to the Debtors' assets, at the Plaintiff's request, the Debtors' properties were appraised by Kenneth Woodford, who has been licensed by the State of Tennessee as a certified general appraiser for approximately twenty years and has achieved the MAI and SRA designations. In assessing the values of the properties detailed in each appraisal report, Mr. Woodford employed, as appropriate, the cost approach, the sales comparison approach, and the income approach to arrive at what he determined was the fair market value of the following real properties owned by the Debtors retroactively to March 27, 2009:

---

[5] Of this amount, $1,239,157.00 is listed by the Debtors on their amended Schedule F and $86,652.00 is listed on amended Schedule D as the unsecured deficiency portion of the claims of the scheduled secured creditors. *See* Coll. Trial Ex. 24; Coll. Trial Ex. 26.

[6] The court does not deem it necessary to calculate accrued interest on the $4,448,510.00 principal balance of the Note beyond its March 28, 2009 maturity date. *See supra* n.3. Additionally, for unexplained reasons, although they listed the Plaintiff's claim in their original Schedule F filed on October 22, 2009, in the amount of $4,600,000.00, the Debtors did not list this claim on the amended Schedule F filed on November 16, 2009.

| property description/address | appraised value |
| --- | --- |
| | |
| Caney Creek Road, Pigeon Forge, TN | $1,100,000.00[7] |
| 4266 Meadow Circle, Kodak, TN | $79,000.00 |
| 3820 Boogertown Road, Sevierville, TN | $17,000.00 |
| 1737 Mountain Shadows Way, Gatlinburg, TN | $215,000.00 |
| Stott Lane lot, Gatlinburg, TN | $45,000.00 |
| Moody Drive lot, Gatlinburg, TN | $60,000.00 |
| Hidden Hills Road lot | $45,000.00 |
| 722/730/734 Powdermill Road, Gatlinburg, TN | $232,000.00 |
| 3401 Bohannon Hollow Road, Sevierville, TN | $345,000.00 |
| Pittman Center, Gatlinburg, TN | $1,900,000.00 |
| 1869 Hidden Hills Road | $260,000.00 |
| 1455/1459 East Parkway, Gatlinburg, TN | $455.000.00 |
| | |
| Total value | $4,753,000.00 |

TRIAL EX. 121; TRIAL EX. 122; TRIAL EX. 123; TRIAL EX. 124[8]; TRIAL EX. 125; TRIAL EX. 126;

TRIAL EX. 127; TRIAL EX. 129; TRIAL EX. 130.  As for additional assets, Mr. Shirley testified that

the Debtors may have owned a lake lot in Claiborne County worth approximately $180,420.00 in

March 2009, which was, at some point in 2009, transferred to their children but then transferred back

---

[7] The appraisal report for Caney Creek Tracts 1, 2, and 3, marked as Trial Exhibit 121, lists their combined and separate values, with the separate values as follows:  Tract 1 at $640,000.00, Tract 2 at $428,000.00, and Tract 3 at $246,000.00.  TRIAL EX. 121 at 9.  Prior to March 27, 2009, the Debtors held an undivided one-half interest in Tract 2, thus limiting the value of their interest to $214,000.00.  Accordingly, the Debtors' interest in the three Caney Creek Road tracts totaled $1,100,000.00 on the date of the transfers to the Trust and Ruth Shirley.

[8] Trial Exhibit 124 is the appraisal report for the cabin at 1737 Mountain Shadows Way, the Stott Lane lot, the Moody Drive lot, and the Hidden Hills Road lot.

to the Debtors. *See* Coll. Trial Ex. 24. Also included within the insolvency analysis is the Debtors' personal property which they owned in March 2009 and, according to Amended Schedule B, was valued at $25,351.00. Coll. Trial Ex. 22. However, the court does not include Caney Creek Tracts 1 and 2 within the insolvency analysis. *See* 11 U.S.C. § 101(32)(A).

Based upon these values, the Debtors' assets on March 27, 2009 approximated $4,104,771.00,[9] excluding the value of the Debtors' interest in Caney Creek Tracts 1 and 2.[10] Because their liabilities of $8,010,238.55 were substantially greater than their assets, the court finds that the Debtors were, in fact, insolvent on the date of the transfers and that they were rendered further insolvent by the transfers.[11]

Neither the Debtors nor Ruth Shirley offered appraisals or other proof to controvert the values testified to by Mr. Woodford. They did, however, contend that Mr. Woodford's valuations were not complete because he did not value Caney Creek Tracts 1 and 2 as a whole and did not include within the value the plants, trees, and vines growing in the vineyard, the fruit trees and plants grown and sold at the Berry Barn, or the beehives. Although they could not assign specific values, the Debtors and Ruth Shirley detailed the work and expense that they have contributed in the past

---

[9] This figure is calculated by backing out of the $4,753,000.00 total value figure appearing on the real property asset valuation chart on the preceding pages the values of Caney Creek Tract 1 ($640,000.00) and the Debtors' interest in Caney Creek Tract 2 ($214,000.00) and by adding in the values of the lake lot in Claiborne County ($180,420.00) and the personal property ($25,351.00).

[10] As previously stated, Caney Creek Tract 3 is not at issue in this adversary proceeding and, as it was owned by the Debtors on March 27, 2009, its value of $246,000.00 has been included within the Debtors' asset analysis.

[11] The court notes that, even including the value of the Debtors' interest in Caney Creek Tracts 1 and 2, which would raise the value of their assets to $4,958,771.00, compared to their liabilities of $8,010,238.55, the result would be the same.

13

and are now putting into making Mountain Mist Farms a working vineyard, such as renovating the

house, clearing the land, planting grape vines, apple trees, and cherry trees, and building Berry Barn.

Notwithstanding the Debtors' arguments that Mr. Woodford did not properly value the properties

or include the family's sweat equity, which does not have a monetary value for the purposes of

assessing "value" in the context of fraudulent conveyances, *see Weir v. Chadwick (In re Chadwick)*,

2011 WL 477858, at *11, 2011 Bankr. LEXIS 461, at *31 (Bankr. E.D. Tenn. Feb. 7, 2011), the fact

remains that Mr. Woodford's testimony and appraisal reports were not rebutted by the Debtors, as

neither testified at trial regarding their opinions, as owners, of the properties' values, nor did Ruth

Shirley introduce any evidence of value.  When asked on direct examination what value he would

assign to Caney Creek Tract 2, Mr. Shirley answered "we have the appraisals of Mr. Woodford" but

that he, Mr. Shirley, had no independent opinion as to the property's value.  His only other testimony

related to the value of Caney Creek Tracts 1 and 2 was that the $1,328,600.00 value listed in the

Debtors' Amended Statement of Financial Affairs for Mountain Mist Farms in its entirety, consisting

of "124 acres of farm land, 8 adjoining acres, 2 cabins[,]" was accurate but that he could not break

down the value by parcel.  TRIAL EX. 16.

For her part, Diane Shirley attempted to introduce into evidence a spreadsheet that she had

prepared to reflect the Debtors' financial solvency in March 2009, which included not only the

values of the foregoing real properties owned by the Debtors using Mr. Woodford's appraisal values,

but also the values of real properties owned by Mountain Shadows, LLC, a limited liability company

owned 100% by the Debtors.   The court, however, sustained the Plaintiff's objection to the

admissibility of this evidence, and the spreadsheet was not admitted into evidence.  The Debtors

14

argued in their post-trial brief that the court should have allowed them to introduce into evidence the value of the property owned by Mountain Shadows, LLC, and that the Mountain Shadows, LLC properties should have been included within their solvency analysis.

Tennessee law is clear that "Tennessee courts have 'implicitly recognized that the corporate veil could be pierced in reverse' in the limited context of a parent-subsidiary relationship between two corporate entities. . . . Outside the parent-subsidiary context, there is no authority for piercing the corporate veil in reverse." *Starnes Family Office, LLC v. McCullar*, 765 F. Supp. 2d 1036, 1050-51 (W.D. Tenn. 2011).

> A corporation is presumptively treated as a distinct entity, separate from its shareholders, officers, and directors. *Schlater v. Haynie*, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991). A corporation's separate identity may be disregarded or "pierced," however, "upon a showing that it is a sham or a dummy or where necessary to accomplish justice." *Id.* Courts are instructed to disregard a corporation's identity "with great caution and not precipitately." *Id.* In determining whether to disregard the corporate fiction, courts must examine the special circumstances of each case. *Electric Power Bd. of Chattanooga v. St. Joseph Valley Structural Steel Corp.*, 691 S.W.2d 522, 526 (Tenn. 1985). The burden is on the party seeking to pierce the corporate veil to prove facts sufficient to warrant such an action. *Schlater*, 833 S.W.2d at 925. Generally speaking, these principles of corporate law would apply with equal force when, as here, a trust rather than a corporation is involved.
>
> While creditors seeking to avail themselves of the piercing concept are usually creditors of the corporation attempting to pierce the veil of the corporation in order to reach the assets of the individual or individuals in control of the corporation, creditors sometimes seek to "reverse pierce" or "hold a corporation accountable for actions of its shareholders." *Mfrs. Consolidation Serv., Inc. v. Rodell*, 42 S.W.3d 846, 866-67 n. 12 (Tenn. Ct. App. 2000) (quoting *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997)). While the Tennessee Supreme Court has recognized the concept of reverse piercing, it did so in the context of a parent/subsidiary relationship, as opposed to the corporation/shareholder, or trust/beneficiary relationship. *See Cont'l Bankers Life Ins. Co. of the South v. Bank of Alamo*, 578 S.W.2d 625, 632-33 (Tenn. 1979). While this court has addressed the issue of reverse piercing in the corporation/shareholder context, we have never

15

adopted it.  *See Reagan v. Connelly*, 2000 WL 1661524, at *6-*7 (Tenn. Ct. App. Nov. 6, 2000); *S.E.A., Inc. v. Southside Leasing Co.*, 2000 WL 1449852, at *10 (Tenn. Ct. App. Sept. 29, 2000); *Mfrs. Consolidation*, 42 S.W.3d at 866-67.

In reversing a trial court's decision to permit reverse piercing, we held in *Reagan* as follows:

> We are of the opinion that disregarding the Corporation's separate identity in this case is improper. Not only are there significant problems inherent in the reverse piercing concept in the corporation/shareholder context, we find it particularly troubling where, as here, a plaintiff is attempting to reach the assets of the corporation to satisfy the debt of one who, as we have already found, is not even a shareholder.  Thus, even should the Tennessee Supreme Court adopt the theory of reverse piercing in the corporation/shareholder context-a decision that must await another day-the facts of the instant case do not fall within the elements of such a cause of action.

*Reagan*, 2000 WL 1661524, at *7.

*Nadler v. Mountain Valley Chapel Bus. Trust*, 2004 WL 1488544, at *4-5, 2004 Ten. App. LEXIS 421, at *9-12 (Tenn. Ct. App. June 30, 2004).[12]  The court correctly sustained the Plaintiff's objection to the admission of the spreadsheet.

The court finds that the Debtors have not rebutted the presumptions created by the presence of the badges of fraud and that the transfers to the Trust and to Ruth Shirley are avoidable under § 548(a)(1) due to actual fraud.  It is irrefutable that the Debtors, in their capacity as Trustees of the Trust, and Ruth Shirley are insiders of the Debtors, and it was stipulated by the parties that the Trust paid no consideration for the transfer of Caney Creek Tracts 1 and 2. Stips. at ¶ 13.  Although the

---

[12]  Moreover, even in the event "reverse piercing" was authorized as such under Tennessee law, the court questions whether the Debtors would be judicially estopped from including any of the Mountain Shadows, LLC property within their insolvency analysis considering that they did not include any of the LLC's properties among their real property listed in Schedule A, nor did they attribute any value to their interest in Mountain Shadows, LLC among their personal property in Schedule B.  *See* Trial Ex. 21; Coll. Trial Ex. 22.  In fact, at paragraph 13 of their original Schedule B, where the Debtors were required to disclose "[s]tocks and interests in incorporated and unincorporated businesses," the Debtors specifically stated "NONE."  In their amended Schedule B, paragraph 13 is blank.

parties have not made the same stipulation concerning consideration for the transfer of a one-half undivided interest in Caney Creek Tract 1 to Ruth Shirley, the court finds that there was not adequate consideration for this transfer either.

Courts generally compare the value of the property transferred with the value of what the debtor received to ascertain whether there was a reasonably equivalent value; however, a dollar-for-dollar equivalent is not required.  *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 707 (6th Cir. 1999); *Butler Aviation Int'l v. Whyte (In re Fairchild Aircraft Corp.)*, 6 F.3d 1119, 1125-26 (5th Cir. 1993). "'Reasonable equivalence' does not require exact equality in value[,]" *Kendall v. Carbatt (In re Carbatt)*, 357 B.R. 553, 560 (Bankr. N.D. Cal. 2006), and "courts do not apply a mathematical formula but consider the circumstances of the particular case." *Bigger v. Fields*, 2005 WL 2043762, at *3-4, 2005 Tenn. App. LEXIS 530, at *10-11 (Tenn. Ct. App. Aug. 25, 2005) (citing *Meacham v. Haley*, 270 S.W.2d 503 (Tenn. Ct. App. 1954)).  A determination of reasonably equivalent value "depends on the circumstances of each case and not on a fixed mathematical formula[,]" with fair market value one factor to be considered.  *Lisle v. John Wiley & Sons, Inc. (In re Wilkinson)*, 196 Fed. Appx. 337, 341-42, 2006 WL 2380887, at *4, 2006 U.S. App. LEXIS 21167, at *10 (6th Cir. Aug. 17, 2006).  Clearly, "the contractual right to receive payment in the event that it turns out well is obviously worth something." *Allard v. Flamingo Hilton (In re Chomakos)*, 69 F.3d 769, 771 (6th Cir. 1995).  Nevertheless, because considerations of valuation are inherently factual, courts must examine the case-specific circumstances surrounding the decision to enter into the challenged transaction."  *Lowe v. B.R.B. Enters., Ltd. (In re Calvillo)*, 263 B.R. 214, 200 (W.D. Tex. 2000).

The oath signed by Allen Shirley accompanying the General Warranty Deed executed by the Debtors in favor of Ruth Shirley recites that "the actual consideration for the transfer, or value of the property, . . . whichever is greater is $50,000.00." Mr. Shirley testified that the $50,000.00 represented the remaining balance on a $60,000.00 note payable to Ruth Shirley for a loan to the Debtors made prior to May 2006. *See* Trial Ex. 20; Trial Ex. 48. Both the Debtors' and Mrs. Shirley's testimony established that Ruth Shirley had loaned the Debtors $60,000.00 of which $10,000.00 had been repaid, that she put in another $20,000.00 to $30,000.00 for the Berry Barn, and that she gave the Debtors money to buy grapevines, among other things. Nevertheless, in his appraisal report, Mr. Woodford valued Caney Creek Tract 1 at $640,000.00 for the house and approximately 82 acres, which is, at a minimum, a value of more than $270,000.00 above any documented contribution by Ruth Shirley attributable to the transfer to her of a one-half undivided interest in this property.

Furthermore, it is also clear that the Debtors, as Settlors and Trustees of the Trust, as well as operators of Mountain Mist Farms located on Caney Creek Tract 1, continued to exercise control over both Caney Creek Tracts 1 and 2 following the transfers to the Trust and to Ruth Shirley and that they were attempting to retain the property at all costs. *See* Trial Ex. 19 at ¶¶ 2-3, 5. During his testimony, Mr. Shirley testified more than once that his intention in creating the Trust was to preserve and hold Mountain Mist Farms for his great-grandchildren and prevent his heirs from selling it. Mr. Shirley also testified that the Trust generates income from the sale of fruit which then goes back into the Trust – a Trust that is controlled exclusively by the Debtors, without any accountability to anyone. *See* Trial Ex. 19 at ¶ 5.

18

Most telling to the court is the timing of the transfers, one day prior to the March 28, 2009 maturity date of the BankEast Note, and the haste with which the General Warranty Deed, Memorandum of Trust, and Quit Claim Deed were recorded, especially in light of the Debtors' stated intention that they wanted to keep the properties in their family. As previously noted, the transfer of the one-half undivided interest in Caney Creek Tract 1 to Ruth Shirley via General Warranty Deed recorded with the Register of Deeds for Sevier County, Tennessee, as Instrument number 09018692 in Book 3312 at Page 228, occurred first, at 3:10 p.m. on March 27, 2009, followed by the recording of the Memorandum of Trust, marked as Instrument number 09018693 in Book 3312 at Page 231, and the transfer of the Debtors' interest in Caney Creek Tract 2 to the Trust via Quit Claim Deed, marked as Instrument number 09018694 in Book 3312 at Page 233.[13] TRIAL EX. 21; TRIAL EX. 20; TRIAL EX. 19. Although the Debtors testified that they had discussed creating a trust with Mr. McDermott, a nephew, months before, which was confirmed by Mr. McDermott's testimony, the fact remains that the Trust was not actually created until March 27, 2009, and the Memorandum of Trust was immediately recorded with the Sevier County Register of Deeds, followed by the transfer of the Debtors' interest in Caney Creek Tracts 1 and 2 into the Trust via the Quit Claim Deed. Mr. Shirley's acknowledgment that Caney Creek Tract 1 was the Debtors' largest unencumbered asset, that it was important to the Debtors that the Caney Creek properties be protected for the benefit of the Debtors' heirs and preserved for their great-grandchildren, and that he had created the Trust for that purpose clearly evidences the Debtors' motivation to protect the property. The court can come to no conclusion other than that the Debtors' March 27, 2009 transfers

---

[13] Because all three instruments were recorded at the same time on March 27, 2009, 3:10 p.m., the only way to determine which was recorded first is by reference to the number assigned each instrument and its book and page numbers.

19

of their interest in Caney Creek Tract 1 to the Trust and Ruth Shirley and in Caney Creek Tract 2 to

the Trust were done so with the actual intent to hinder, delay, and/or defraud their creditors.[14]

**B**

The court also finds that the transfers are constructively fraudulent under § 548(a)(1)(B)

because the Debtors received less than reasonably equivalent value in exchange for the transfers and

they were insolvent or rendered insolvent by the transfers.  Subsection (B), unlike subsection (A),

does not carry an element of intent; instead, all that is required is a showing of those two elements.

*Holcomb Health Care Servs., LLC*, 329 B.R. at 672.  For the purposes of this subsection, the statute

defines "value" as "property, or satisfaction or securing of a present or antecedent debt of the debtor,

but does not include an unperformed promise to furnish support to the debtor or to a relative of the

debtor[.]"  11 U.S.C. § 548(d)(2)(A) (2006).

"[R]easonably equivalent value is not an esoteric concept:  a party receives reasonably

equivalent value for what it gives up if it gets 'roughly the value it gave[,]'" *VFB, LLC v. Campbell*

*Soup Co.*, 482 F.3d 624, 631 (3d Cir. 2007) (quoting *Pension Transfer Corp. v. Beneficiaries Under*

*the Third Amendment to Fruehauf Trailer Corp. Retirement Plan No. 003 (In re Fruehauf Trailer*

*Corp.*), 444 F.3d 203, 213 (3d Cir. 2006)), and is not limited "to money nor to value transferred

pursuant to a valid contract."  *For Your Ease Only, Inc. v. Calgon Carbon Corp.*, 560 F.3d 717, 722

---

[14] Although Mr. Shirley testified that he created the trust to prevent his heirs from selling the property after his passing, he also acknowledged that Ruth Shirley, who, following the transfer on March 27, 2009, owned a one-half undivided interest in both Caney Creek Tracts 1 and 2, has not agreed to put her interest into the Trust.  Accordingly, upon her death, her interest would either be devised by Ruth Shirley or distributed in accordance with intestate succession and would not be preserved by the Trust.

(7th Cir. 2009).  The Sixth Circuit has stated the following with respect to reasonably equivalent

value:

> The BAP noted correctly that 'reasonably equivalent' is not defined by the
> Bankruptcy Code, but focus has been placed upon the consideration received by the
> debtor, not the value given by the transferee:
>
>> [T]he proper focus is on the net effect of the transfers on the debtor's
>> estate, the funds available to the unsecured creditors.  As long as the
>> unsecured creditors are no worse off because the debtor, and
>> consequently the estate, has received an amount reasonably
>> equivalent to what it paid, no fraudulent transfer has occurred.
>
> *Harman v. First Am. Bank of Md. (In re Jeffrey Bigelow Design Group, Inc.)*, 956
> F.2d 479, 484 (4th Cir. 1992).  "[I]t is clear that the debtor need not collect a dollar-
> for-dollar equivalent to receive reasonably equivalent value."  *Butler Aviation Int'l,
> Inc. v. Whyte (In re Fairchild Aircraft Corp.)*, 6 F.3d 1119, 1125-26 (5th Cir. 1995).

*Congrove v. McDonald's Corp. (In re Congrove)*, 222 Fed. Appx. 450, 454, 2007 WL 130414, at

*3, 2007 U.S. App. LEXIS 764, at *9-10 (6th Cir. Jan. 10, 2007).  In essence, "[a] determination of

reasonably equivalent value is 'fundamentally one of common senses, measured against market

reality.'"  *Lindquist v. JNG Corp. (In re Lindell*, 334 B.R. 249, 256 (Bankr. D. Minn. 2005) (quoting

*In re Northgate Computer Sys., Inc.*, 240 B.R. 328, 365 (Bankr. D. Minn. 1999)).

The determination does not turn on whether "the value of what went out, i.e., the value of

the Property, exceeded the value of what came in, i.e., the total consideration[,]" as "[t]here is no set

minimum percentage or monetary amount necessary to constitute reasonably equivalent value[.]"

*Calvillo*, 263 B.R. at 220; *accord Staats v. Butterworth Props., Inc. (In re Humble)*, 19 Fed. Appx.

198, 200, 2001 WL 1006148, at *1, 2001 U.S. App. LEXIS 19093, at *4 (6th Cir. Aug. 20 2001)

("Courts have rejected fixed mathematical formulae to determine whether an exchange of

'reasonably equivalent values' has occurred for purposes of section 548 in favor of analysis based

21

upon the facts and circumstances of each particular case."). Nevertheless, while there is no minimum percentage or amount required, "the phrase 'reasonably equivalent value' means 'approximately equivalent' or 'roughly equivalent.'" *BFP v. Resolution Trust Corp.*, 114 S. Ct. 1757, 1762 n.4 (1994).

As discussed, the parties have stipulated that the Trust did not pay the Debtors any consideration for the transfer of their interest in Caney Creek Tracts 1 and 2. The court has additionally found that there was not sufficient consideration given for the transfer of the one-half undivided interest in Caney Creek Tract 1 to Ruth Shirley. Finally, the court has determined that the Debtors were insolvent on March 27, 2009. As such, the court also finds that the transfer of the Debtors' interest in Caney Creek Tracts 1 and 2 to the Trust and of their interest in Caney Creek Tract 1 to Ruth Shirley were constructively fraudulent and are thus avoidable under § 548(a)(1)(B).

## C

For the same reasons, the court finds that the transfers were fraudulent under Tennessee Code Annotated § 66-3-305(a) and avoidable under 11 U.S.C. § 544(b), which allows for avoidance of the transfer of "an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title." 11 U.S.C. § 544(b); *see Lyon v. Eiseman (In re Forbes)*, 372 B.R. 321, 330 (B.A.P. 6th Cir. 2007) ("Essentially, this provision permits the trustee to 'stand in the shoes' of an unsecured creditor and assert causes of action under state fraudulent conveyance laws for the benefit of all creditors.") (citations omitted).

At trial, Mr. Shirley testified that the Debtors' debts were approximately the same in March 2009 as they were in September 2009. It is also undisputed that in amended Schedule F, the Debtors listed unsecured debt of $1,239,157.00 and that Class 14 in the Modified Third Amended Plan of Reorganization addresses payment of the Debtors' allowed unsecured claimants. *See* COLL. TRIAL Ex. 26. Under the umbrella of § 544(b), both transfers may be avoided under Tennessee Code Annotated § 66-3-305(a), which provides:

> (a) A transfer[15] made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > (1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
> >
> > (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> >
> > > (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> > >
> > > (B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

TENN. CODE ANN. § 66-3-305. Under the Uniform Fraudulent Transfer Act, a debtor is statutorily presumed to be insolvent if "the sum of the debtor's debts [in existence when the transfer occurs]

---

15 "Transfer" means "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance[.]" TENN. CODE ANN. § 66-3-302(12) (2004).

is greater than all of the debtor's assets, at a fair valuation[,]" TENN. CODE ANN. § 66-3-303 (2004),[16]

and "value" is defined as follows:

> (a)  Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.

> (b)  For the purposes of §§ 66-3-305(a)(2) . . ., a person gives a reasonably equivalent value if the person acquires an interest of the debtor in an asset pursuant to a regularly conducted, noncollusive foreclosure sale or execution of a power of sale for the acquisition or disposition of the interest of the debtor upon default under a mortgage, deed of trust, or security agreement.

> (c)  A transfer is made for present value if the exchange between the debtor and the transferee is intended by them to be contemporaneous and is in fact substantially contemporaneous.

TENN. CODE ANN. § 66-3-304 (2004).

> Under Tennessee law, the badges of fraud are statutorily defined as follows:

> (1) The transfer or obligation was to an insider;

> (2) The debtor retained possession or control of the property transferred after the transfer;

> (3) The transfer or obligation was disclosed or concealed;

> (4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

> (5) The transfer was of substantially all of the debtor's assets;

> (6) The debtor absconded;

> (7) The debtor removed or concealed assets;

---

[16] A 'debt' is defined as "liability on a claim[,]" and 'claim' is defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]"  TENN. CODE ANN. § 66-3-302(3), (5) (2004).

24

(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

TENN. CODE ANN. § 66-3-305(b) (2004); *see also Holcomb Health Care Servs., LLC)*, 329 B.R. at 670-71 (citing badges of fraud recognized by Tennessee courts); *Brandenburg v. Hayes*, 2010 WL 2787854, at *3 n.4, 2010 Tenn. App. LEXIS 446, at *7-8 n.4 (Tenn. Ct. App. July 14, 2010) (same).

 "The presence of one or more of the badges of fraud gives rise to a presumption of fraud and consequently shifts the burden of disproving fraud to the defendant. . . . [Additionally,] the confluence of several badges can be conclusive evidence of fraudulent intent, absent significantly clear evidence of debtor's legitimate supervening purpose." *Holcomb Health Care Servs., LLC*, 329 B.R. at 671.  Furthermore, if it is proved that a transfer was made with actual intent to defraud, "then 'the entirety of the transfer is avoidable' even if reasonably equivalent value is given in exchange." *Silverman v. United Talmudical Acad. Torah Vyirah, Inc. (In re Allou Distrib., Inc.)*, 446 B.R. 32, 63 (Bankr. E.D.N.Y. 2011) (quoting *Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Group, LLC)*, 362 B.R. 624, 629 (Bankr. S.D.N.Y. 2007)).

Because the elements and requirements of § 66-3-305(a) are substantially identical to those found in § 548(a), the analysis remains the same, as does the result.  The transfers of the Debtors'

interest in Caney Creek Tracts 1 and 2 to the Trust and Tract 1 to Ruth Shirley are also avoidable

under the Tennessee Fraudulent Transfer Act.[17]

### III

In summary, the March 27, 2009 transfers of the Debtors' interest in Caney Creek Tract 1

to the Allen C. Shirley and Diane W. Shirley Revocable Living Trust and Ruth W. Shirley are

avoidable under 11 U.S.C. § 548(a)(1)(A) and (B) and Tennessee Code Annotated § 66-3-305(a) and

recoverable for the benefit of the Debtors' bankruptcy estate pursuant to 11 U.S.C. § 550(a)(1).

Additionally, the March 27, 2009 transfer of the Debtors' interest in Caney Creek Tract 2 to the

Allen C. Shirley and Diane W. Shirley Revocable Living Trust is also avoidable under 11 U.S.C.

§ 548(a)(1)(A) and (B) and Tennessee Code Annotated § 66-3-305(a) and recoverable for the benefit

of the Debtors' bankruptcy estate pursuant to 11 U.S.C. § 550(a)(1).

A Judgment consistent with this Memorandum will be entered in each adversary proceeding.

The Judgments, in addition to directing the avoidance and recovery of the March 27, 2009 transfers

of Caney Creek Tracts 1 and 2, will direct that the respective Defendants, within fourteen days,

execute and deliver appropriate deeds conveying their respective interests in Caney Creek Tracts 1

and 2 back to the Debtors Allen Carter Shirley and Diane Winn Shirley.  The Judgments will also

provide that the Debtors shall record each deed in the Office of the Register of Deeds for Sevier

County, Tennessee, within three days after receipt and shall then forward a certified copy of the

---

[17] As an alternative cause of action, the Plaintiff averred that the transfer to Ruth Shirley should be set aside as a preference under 11 U.S.C. § 547(b) (2006); however, because the court has already found that the transfer is avoidable under both sections of § 548(a) as well as Tennessee Code Annotated § 66-3-305(a), it need not make a determination under the preference theory.

recorded deed to Plaintiff's counsel.  Thereafter, Caney Creek Tracts 1 and 2 shall be liquidated in

accordance with Section E of Article III of the confirmed Third Amended Plan of Reorganization

of BankEast, as modified.

FILED:  September 12, 2011

BY THE COURT

*/s/  RICHARD STAIR, JR.*

RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE